IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| APEX MEDICAL RESEARCH, AMR, INC. and APEX MEDICAL RESEARCH, MI, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AHMED A. ARIF, AA MRC, LLC, AHMED A. ARIF, M.D., P.C., and APEX MEDICAL RESEARCH OF FLINT, P.C., <br><br> Defendants. <br><br>──────────────────────────────── <br><br> AHMED A. ARIF and AHMED A. ARIF, M.D., P.C., <br><br> Counter-Plaintiffs, <br><br> v. <br><br> APEX MEDICAL RESEARCH, AMR, INC., APEX MEDICAL RESEARCH, MI, INC., and NUSRAT DEEN AHMED, <br><br> Counter-Defendants. | Case No.: 15-cv-02458 <br><br> Judge Amy J. St. Eve <br><br> Magistrate Judge Jeffrey Cole |

**PLAINTIFF/COUNTER-DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii
PRELIMINARY STATEMENT AND SUMMARY OF THE PARTIES' DISPUTE ................. 1
STATEMENT OF MATERIAL UNDISPUTED FACTS ........................................................... 4
    A.    The Parties and the Agreement ............................................................................... 4
    B.    The Relevant Provisions of the Written Agreement ............................................... 5
    C.    Dr. Arif's Breaches of the Agreement .................................................................... 6
SUMMARY JUDGMENT STANDARD .................................................................................... 7
I.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT AND BREACH OF FIDUCIARY DUTY CLAIMS ........................... 8
    A.    Plaintiff Is Entitled To Summary Judgment On Its Breach of Contract Claim (Count I) ........................................................................................................ 8
        1.    Dr. Arif's Promise to Work Exclusively With Apex AMR is a Valid and Enforceable Covenant ................................................................... 8
        2.    Whether Plaintiff Breached the Agreement is Irrelevant Because Dr. Arif Elected to Continue the Contract Notwithstanding the Alleged Breach ............................................................................................. 9
        3.    Dr. Arif Has Breached the Agreement ...................................................... 11
        4.    Plaintiff Has Been Damaged ...................................................................... 12
        5.    Plaintiff Is Entitled to Specific Performance .............................................. 12
    B.    Plaintiff Is Entitled To Summary Judgment on Its Breach of Fiduciary Duty Claim (Count IV) ........................................................................................... 14
        1.    Dr. Arif Owes Fiduciary Duties .................................................................. 14
        2.    Dr. Arif Breached His Fiduciary Duties ..................................................... 15
        3.    The Breach Proximately Caused Plaintiff's Injury .................................... 15
II.    COUNTER-DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNTER-PLAINTIFFS' UNJUST ENRICHMENT CLAIM ............................... 16
CONCLUSION ............................................................................................................................ 17

Plaintiff Apex Medical Research, AMR, Inc., ("Apex AMR") respectfully moves for summary judgment on its claims for breach of contract (Count I) and breach of fiduciary duty (Count IV) against Defendant Dr. Ahmed A. Arif ("Dr. Arif"). Counter-Defendants, Apex AMR, Apex Medical Research, MI, Inc. ("Apex Michigan"), and Ms. Nusrat Deen Ahmed also move for summary judgment on Counter-Plaintiffs' unjust enrichment claim (Count II). As explained below, Defendants' admissions establish that there is no genuine issue of material fact and that Plaintiff is entitled to judgment as a matter of law.

## PRELIMINARY STATEMENT AND SUMMARY OF THE PARTIES' DISPUTE

The facts that form the basis for Plaintiff's motion are undisputed and are fully presented by the parties' own pleadings and corporate records. The Court may resolve this motion by applying well established Illinois contract law to these undisputed facts.

Apex AMR arranges for physicians to perform clinical trials to evaluate the safety and efficacy of newly developed medications. Apex AMR identifies new clinical trials, applies for approval to participate, and negotiates the contract terms for the services of the physicians with whom Apex AMR is associated. The participating physician, called a "Principal Investigator," is primarily responsible for the clinical aspects of administering the trial, and Apex AMR provides the Principal Investigator and his staff technical assistance in complying with the procedures and record-keeping requirements for performing clinical trials. The clinical trials are typically sponsored by either a pharmaceutical company or a clinical research organization (collectively, "Trial Sponsors"). Apex AMR or one of its Apex affiliates contracts directly with the Trial Sponsor to perform the trial and to provide the services of the Principal Investigator. Apex AMR collects the fees paid by the Trial Sponsor and then compensates the Principal Investigator. A clinical trial may continue for a period of multiple years, with the Trial Sponsor paying a fee for each visit by each patient until the completion of the trial.

Apex AMR was founded by Ms. Ahmed and her spouse, Dr. Azazuddin Ahmed. This dispute arises from the business relationship between Apex AMR and Dr. Arif, a medical school classmate and friend of Dr. Ahmed whom Dr. and Ms. Ahmed invited to become a Principal Investigator for Apex AMR and its affiliate Apex Michigan. Over a period of several years, Apex AMR has developed a substantial portfolio of ongoing clinical trials in Flint, Michigan, where Dr. Arif maintains his medical practice. The contracting party for each of these clinical trials is either Apex AMR or Apex Michigan, and Dr. Arif is the Principal Investigator. As a condition of working with Dr. Arif to develop this clinical trials business, Apex AMR and Dr. Arif agreed that he would work exclusively with Apex AMR and would not participate in any competing clinical trials business long as the parties continued their business relationship. The terms of their relationship are set forth in a July 2011 written agreement, which is the contract in suit (the "Agreement").

After working with Apex AMR for several years, Dr. Arif suddenly sent a purported notice of termination of the Agreement on December 9, 2014. Dr. Arif asserted the right to terminate the Agreement at any time and also asserted that Apex AMR's own prior breaches, of which Dr. Arif had given no prior notice, had relieved him of any continuing obligations under the Agreement. Unbeknownst to Plaintiff at that time, Dr. Arif already had secretly formed six months earlier a competing clinical trials business, AA MRC, LLC, to enter into clinical trials in competition with Apex AMR and Apex Michigan. Rather than simply walking away from the Apex business and pursuing his competing venture, however, Dr. Arif instead is continuing to perform partially his obligations under the parties' Agreement. He is continuing to act as Principal Investigator for each of the ongoing Apex clinical trials, purporting to perform under contracts between the Trial Sponsors and either Apex AMR or Apex Michigan. Although he is

diverting payments for these clinical trials to an entity under his exclusive ownership and control, holding himself out as Apex Medical Research of Flint, P.C. ("Apex Flint"), he also has represented through counsel that he intends to share the proceeds of these clinical trials with Plaintiff according to the terms of the Agreement. Even while he enjoys the entire benefits of his association with Apex AMR and his full rights under the terms of the parties' Agreement, he asserts that that same Agreement is not binding upon him and has no further force or effect. On this basis, he refuses to honor his promise to work exclusively with Apex AMR, at the same time he continues to perform services and collect payment for clinical trials arranged by Apex AMR under contracts between the Trial Sponsors and Apex AMR or Apex Michigan.

Plaintiffs vigorously dispute Dr. Arif's claims that they have breached the Agreement or that the Agreement affords him any right of termination so long as any of the clinical trials remain in progress. That issue, however, is not material to resolving Dr. Arif's liability for breach of contract. As a matter of basic contract law as applied to the undisputed facts, Dr. Arif remains bound to perform the Agreement because he has elected to continue to partially perform the Agreement and to enjoy the benefits of the parties' Agreement. Even upon a material breach, the non-breaching party has the choice either to terminate the contract or instead to continue to treat the contract as mutually binding on the parties. Whatever rights Dr. Arif might have enjoyed had he properly terminated the Agreement, Dr. Arif has instead bound himself to continue to perform the Agreement by continuing to accept the benefits of the Agreement and by proceeding as though the Agreement remains in effect. It would be a neat trick for Dr. Arif to continue to perform the Apex clinical trials and to collect the entire revenues from those trials while at the same time disclaiming any of the burdens or restrictions imposed by the parties' Agreement. Whether Apex AMR performed or not is thus irrelevant, and no factual issue bars

3

summary judgment on Apex AMR's claim to enforce the exclusivity provisions of the parties' Agreement.

Plaintiff also moves for summary judgment on its claim for breach of fiduciary duty. Dr. Arif is a 50% shareholder in Apex Michigan, a closely held corporation, and thus owes fiduciary obligations to Apex AMR as Apex Michigan's other 50% shareholder. The parties expressly affirmed their mutual fiduciary obligations in their 2011 Agreement. Dr. Arif has breached these duties by secretly forming a competing clinical trials business, engaging in competition while still a 50% shareholder of Apex Michigan, and diverting payments owing to Apex Michigan and Apex AMR to a separate entity under his sole ownership and control, the so-called Apex Flint.

Finally, Counter-Defendants also move for summary judgment on Counter-Plaintiffs' unjust enrichment claim. As a matter of black letter Illinois law, the unjust enrichment claim will not lie because the parties' dispute arises under and is governed by the written Agreement between them.

## STATEMENT OF MATERIAL UNDISPUTED FACTS

### A. The Parties and the Agreement

Plaintiff Apex Medical Research, AMR, Inc. is an Illinois corporation operating a clinical trials business, conducting research trials at sites in Illinois, Ohio, and Michigan. (Plaintiff's Statement of Undisputed Facts ("Pls. Stmt.") at ¶¶ 1, 13.) Plaintiff Apex Medical Research, MI, Inc. is an Illinois corporation and has two shareholders each holding 50% of its stock, Apex AMR and Dr. Arif. (Pls. Stmt. at ¶¶ 2, 28; Dkt. No. 21, Counter-Plaintiffs' Counterclaim ("Countercl.") at ¶¶ 24, 71, 76, 86.) Counter-Defendant Nusrat Ahmed is an individual and a citizen and resident of Illinois, and she is the majority shareholder of Apex AMR. (Pls. Stmt. at ¶¶ 6, 32.)

4

Defendant Ahmed Arif is a resident and citizen of Michigan, where he practices medicine. (Pls. Stmt. at ¶¶ 4, 17.) Defendant AA MRC, LLC is a Michigan limited liability company under the control of Dr. Arif. (Pls. Stmt. at ¶ 5; Countercl. at ¶ 52.) Defendant Ahmed A. Arif, M.D., P.C. is a Michigan professional service corporation of which Dr. Arif is the principal shareholder. (Pls. Stmt. at ¶ 6; Countercl. at ¶ 3.) Defendant Apex Medical Research of Flint, P.C. is a Michigan professional service corporation, which Dr. Arif controls. (Pls. Stmt. at ¶ 7; Countercl. at ¶ 58.)

Apex AMR is a small clinical trial business. (Pls. Stmt. at ¶ 13.) Apex AMR contracts with Trial Sponsors to conduct clinical trials. (*Id.*) To fulfill these contracts, Apex AMR establishes long-term relationships with Principal Investigators, the doctors who manage each study in conjunction with Apex. (Pls. Stmt. at ¶ 14.)

In or around 2007, Dr. Arif agreed to become a Principal Investigator for clinical studies procured by Apex AMR. (Pls. Stmt. at ¶¶ 19-21.) The parties operated pursuant to an oral agreement until June 11, 2011, when Dr. Arif and Apex AMR executed a written agreement. (Pls. Stmt. at ¶¶ 23, 24; Countercl. at ¶ 1.)

### B. The Relevant Provisions of the Written Agreement

The Agreement contains three provisions relevant to this motion. (*See* Pls. Stmt. at ¶ 25.) First, the Agreement contemplates that the parties would form Apex Michigan, with Apex AMR and Dr. Arif each owning 50% and each participating in the day-to-day operations of Apex Michigan. (Dkt. No. 14, First Amended Complaint, Exhibit A ("Agreement"), § I. *See also* Pls. Stmt. at ¶¶ 26, 28; Countercl. at ¶¶ 24, 71, 76, 86.) Following the execution of the Agreement, Apex Michigan was formed on June 27, 2011. (Pls. Stmt. at ¶ 27.)

Second, the Agreement contains two provisions that together restrict Dr. Arif from entering into competition with Apex AMR or accepting clinical trials from any other source.

5

First, the section headed "Non-Compete" requires that Dr. Arif conduct only those clinical trials arranged for him by Apex AMR. (Agreement at § IX(1); Pls. Stmt. at ¶ 25.) This restriction also appears in Section IV of the Agreement, which states, Dr. Arif "agrees to not seek or accept any clinical trials not procured under the terms of this Agreement." (Agreement at IV(2)(a); Pls. Stmt. at ¶ 25.) Dr. Arif has admitted in his pleadings that the Agreement required him to conduct only clinical trials procured for him by Apex AMR. (Pls. Stmt. at ¶ 39; Countercl. at ¶¶ 1, 18, 31.) Third, the Agreement contains an express covenant of good faith and fair dealing, requiring that the parties "deal with each other fairly and in good faith." (Agreement at II; Pls. Stmt. at ¶ 25.)

### C. Dr. Arif's Breaches of the Agreement

Pursuant to the Agreement, Apex AMR secured and negotiated clinical trial agreements for Dr. Arif. The parties operated for several years under the Agreement without significant incident. (*See* Pls. Stmt. at ¶¶ 34, 36-38.) Unbeknownst to Plaintiffs, however, Dr. Arif had decided to begin a competing venture. On May 9, 2014, Dr. Arif formed AA MRC, LLC. (*See* Pls. Stmt. at ¶ 40; Dkt. No. 21, Defendants' Answer ("Def. Answer") at ¶ 39.) Dr. Arif admits that he formed this entity for the purpose of entering into new clinical trial agreements directly with third party trial sponsors and without the participation of Apex AMR. (Pls. Stmt. at ¶¶ 41-43; Countercl. at ¶ 52.)

On December 9, 2014, Dr. Arif and Apex Medical Research of Flint, P.C., sent a letter to Apex AMR purporting to terminate the Agreement. (Pls. Stmt. at ¶ 48; Dkt. No. 14, First Amended Complaint, Exhibit B, Purported Termination Letter.) Dr. Arif claimed that Apex AMR failed to provide training and guidance, failed to properly secure payments from Sponsors, and failed to properly remit payments to Dr. Arif. (Pls. Stmt. at ¶ 48.) In addition, the letter

6

stated that Dr. Arif would be contacting Trial Sponsors and instructing them to pay him directly, instead of sending payments to Apex AMR or Apex Michigan. (*Id.*)

Following the December 9, 2014 letter, Dr. Arif contacted the clinical trial sponsors under Apex AMR or Apex Michigan contracts and asked them to direct payment to him. (*See* Pls. Stmt. at ¶ 44; Countercl. at ¶¶ 58, 59.) Dr. Arif has continued to perform the clinical trial contracts between Apex AMR and Sponsors procured for him by Apex AMR, (*See* Pls. Stmt. at ¶¶ 46, 51-53; Countercl. at ¶ 59.) Dr. Arif, through AA MRC, has entered into new clinical agreements with third party clinical trial sponsors, independent of Apex AMR and Apex Michigan. (*See* Pls. Stmt. at ¶¶ 41, 47; Countercl. at ¶ 52.) This conduct is continuing. (Pls. Stmt. at ¶¶ 41, 47.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Parker v. Side by Side, Inc.*, 50 F. Supp. 3d 988, 1003 (N.D. Ill. 2014) (St. Eve, J.). The movant bears the initial responsibility to show that there is no genuine issue of material fact and that judgment should be granted in its favor. *Parker*, 50 F. Supp. 3d. at 1003. Once the movant "has carried its initial burden [] 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* at 1004 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Instead, the opponent must set forth "specific facts" showing a genuine dispute of material fact that warrants a trial. *Id.*

7

I. **PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT AND BREACH OF FIDUCIARY DUTY CLAIMS**

A. **PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT CLAIM (COUNT I)**

1. **Dr. Arif's Promise to Work Exclusively With Apex AMR is a Valid and Enforceable Covenant**

The parties agree that the Agreement is a valid contract entered into between Apex AMR and Dr. Arif. The parties also agree that the Agreement binds Dr. Arif to work exclusively with Apex AMR when performing clinical trials, at least unless and until the Agreement is properly terminated. (Pls. Stmt. at ¶ 39; Countercl. at ¶¶ 1, 18, 31.) Although the parties' Agreement uses the term "noncompete" to refer to Dr. Arif's obligations, the obligation at issue here is not a "noncompete" as litigants typically use the term. Instead, the obligation at issue is Dr. Arif's promise not to compete with Apex AMR at the same time that he is performing clinical trials arranged for him by Apex AMR. (Agreement at §§ IV(2)(a), IX(1).) There can be no dispute that these provisions are valid and enforceable because they protect a legitimate business interest to ensure that a commercial party is not unwittingly bound by contract to help grow the business of a current direct competitor. *See Vendo Co. v. Stoner*, 105 Ill. App. 2d 261, 282, 245 N.E.2d 263, 273 (2d Dist. 1969); *Cent. Water Works Supply, Inc. v. Fisher*, 240 Ill. App. 3d 952, 958, 608 N.E.2d 618, 623 (1993) ("Plaintiff has a protectable interest in its success as a company.") Sometimes referred to as an "in-term" non-compete, such covenants terminate upon the conclusion of the parties' dealings. *Vendo Co.*, 245 N.E.2d at 273 (collecting cases distinguishing "in-term" from "post-term" non-compete agreements). Illinois law provides no basis to impose any heightened scrutiny for such an in-term exclusivity requirement. *See Vendo Co.*, 245 N.E.2d at 275 (citing *McDonald's System, Inc. v. Sandy's, Inc.*, 45 Ill. App. 2d 57, 195 N.E.2d 22 (1963)).

8

### 2. Whether Plaintiff Breached the Agreement is Irrelevant Because Dr. Arif Elected to Continue the Contract Notwithstanding the Alleged Breach

While acknowledging his promise to work exclusively with Apex AMR, Dr. Arif asserts that he is no longer bound because he has properly terminated the Agreement. It is a basic principle of contract law that a party may not terminate a contract, rid itself of its contractual burdens, and yet still continue to enjoy the contract's benefits. This is exactly what Dr. Arif is attempting. Because he has elected to continue to enjoy his contractual benefits, Dr. Arif must be held to his contractual burdens. Whether Plaintiff breached the Agreement or not is thus irrelevant.

If a party to a contract breaches, the non-breaching party is confronted with a choice to either (1) abandon the contract and cease performance; or (2) continue to perform the contract and sue for damages. *Emerald Invs. Ltd. P'ship v. Allmerica Fin. Life Ins. & Annuity Co.*, 516 F.3d 612, 618 (7th Cir. 2008) (applying Illinois law). When the party chooses the former option, "then it has elected termination, and it cannot continue to perform or expect performance under the contract." *ESPN, Inc. v. Office of Com'r of Baseball*, 76 F. Supp. 2d 383, 389 (S.D.N.Y. 1999). When the party makes the latter choice and instead decides to continue the contract, "it is bound to the obligations that the contract imposes on it." *Emerald Invs. Ltd. P'ship*, 516 F.3d at 618. In other words, "it loses the right to abandon its own contractual obligations." *Empire Elecs., Inc. v. D&D Tooling & Mfg., Inc.*, No. 13 C 376, 2014 WL 5819728, at *6 (N.D. Ill. Nov. 10, 2014) (St. Eve, J.).

A party is never permitted to disclaim its own contractual obligations and yet continue to enjoy the benefits of the same contract. Indeed, "in no jurisdiction can a party retain what it has received under such a contract, and refuse to perform the contract." *Maguire v. Campagnoli & Co.*, 17 N.Y.S.2d 129, 132 (Sup. Ct. 1939). *See also S & R Corporation v. Jiffy Lube*

9

*International, Inc.*, 968 F.2d 371, 376 (3rd Cir. 1992) (collecting cases and noting "[u]nder no circumstances may the non-breaching party stop performance *and* continue to take advantage of the contract's benefits."); *Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369 (S.D.N.Y. 2000); *ARP Films, Inc. v. Marvel Entm't Grp., Inc.*, 952 F.2d 643, 649 (2d Cir. 1991) (non-breaching party's "decision to continue receiving [contractual] benefits . . . was tantamount to an election to affirm the contract" and its decision to stop making payments and fulfill other contractual obligations "was [therefore] impermissible.").

This Court confronted the same issue in *Empire Elecs., Inc. v. D&D Tooling & Mfg., Inc.*, No. 13 C 376, 2014 WL 5819728, at *6 (N.D. Ill. Nov. 10, 2014) (St. Eve, J.), a breach of contract action. The Plaintiff had allegedly breached the parties' agreement by not making certain payments to Defendant. The Defendant, however, elected to continue the contract rather than terminate. This Court noted that, although the Defendant "could have terminated the contract when [Plaintiff] did not pay [properly] . . . [i]t did not do so, and continued to perform under the contract for another nine months." *Id.* Applying the election doctrine, this Court held that the Plaintiff was entitled to enforce the contract regardless of Plaintiff's prior breach because the Defendant elected to enjoy the contract's benefits. *See also Vendo Co.*, 245 N.E.2d at 275 (approving court's enforcement of an in-term non-compete and noting "[a]s long as appellees seek to avail themselves of the beneficial provisions of their franchise contract, they should not be permitted to disregard or refuse to abide by [its] obligations[.]" (quoting *McDonald's Sys., Inc. v. Sandy's Inc.*, 195 N.E.2d 22, 31 (Ill. App. Ct. 1963))).

In this case, Dr. Arif has chosen not to abandon the Agreement. Instead, he has used Plaintiff's purported breach as a pretext to cherry-pick the specific contract provisions that suit his own interest and to ignore the remaining contract terms. The law of contract does not

countenance such opportunistic behavior. *Emerald Invs. Ltd. P'ship*, 516 F.3d at 618. Dr. Arif's enjoyment of the contractual benefits is "tantamount to an election to affirm the contract." *ARP Films, Inc.*, 952 F.2d at 649. Under the familiar contract principles discussed above and as this Court held in *Empire Electronics*, Dr. Arif must be held to the burdens of the contract regardless of whether Plaintiff performed.

### 3. Dr. Arif Has Breached the Agreement

Dr. Arif's own pleadings admit that he breached the exclusivity provisions in the Agreement. Dr. Arif admits that the Agreement required him to perform clinical trials solely for Apex AMR. (Pls. Stmt. at ¶ 39; Countercl. at ¶¶ 1, 18, 31.) On May 9, 2014, however, Dr. Arif formed AA MRC, LLC. (Pls. Stmt. at ¶ 39.) Dr. Arif admits that he formed AA MRC for the purpose of entering into new clinical trials in competition with Apex AMR and that he has in fact entered into contracts to perform new clinical trials through AA MRC. (Pls. Stmt. at ¶ 41.)

Second, Dr. Arif admits that he has unilaterally instructed the Trial Sponsors to direct payments to Apex Flint for payments owing under contracts with Apex AMR and Apex Michigan and that he is collecting payments from Trial Sponsors for performance of these Apex contracts. (Pls. Stmt. at ¶¶ 44, 46.) Dr. Arif's use of a separate business entity with a confusingly similar name to obtain payment from unwitting Trial Sponsors obviously smacks of bad faith and fraud. Yet, even here, Dr. Arif has adopted a posture of complying partially with his contractual obligations under the Agreement. In his counsel's December 9, 2014 purported notice of termination, Dr. Arif represents that, even though he has diverted payment to his own entity, he "has **elected** to distribute the proceeds in the manner such proceeds have [sic] **under the Agreement**." (Dkt. No. 14, First Amended Complaint, Exhibit B, Purported Termination Letter (emphasis added).) Dr. Arif attempts simultaneously to enjoy the contract's benefits,

11

partially perform his obligations, and terminate the agreement. The law of contract deems this an election that binds Dr. Arif to the entire terms of the Agreement.

### 4. Plaintiff Has Been Damaged

Although the full extent of Plaintiff's injury is not susceptible to resolution on summary judgment, it is beyond dispute that Plaintiff has lost the revenues that Dr. Arif has diverted to Apex Flint and the new contracts Dr. Arif has diverted to AA MRC. (Pls. Stmt. at ¶¶ 41, 44, 46, 51-53.) Dr. Arif quite simply has appropriated for his own benefit substantially the entire assets of the parties' clinical trials business in Michigan, including even the business's name, identity, good will and reputation. (Pls. Stmt. at ¶¶ 15-16, 41-42, 44, 46-47, 51-53.)

### 5. Plaintiff Is Entitled to Specific Performance

Plaintiff requests specific performance of Dr. Arif's promise to work exclusively with Apex AMR. As discussed above, the relevant provisions of the Agreement together form an enforceable exclusive dealing covenant or in-term non-compete. (Agreement at §§ IV(2)(a), IX(1).) Plaintiff is entitled to specific performance of Dr. Arif's covenant not to conduct any clinical trials except through Apex AMR. Under Illinois law, "[i]n order to be entitled to specific performance, plaintiff must allege and prove the following elements: (1) the existence of a valid, binding, and enforceable contract; (2) plaintiff has complied with the terms of his contract or is ready, willing, and able to perform his part of the contract; and (3) defendant failed or refused to perform his part of the contract." *Gateway Sys., Inc. v. Chesapeake Sys. Solutions, Inc.*, 836 F. Supp. 2d 625, 639 (N.D. Ill. 2011). Regarding the second element, contract law is clear that specific performance "may be granted in spite of a breach by the party seeking relief, unless the breach is serious enough to discharge the other party's remaining duties of performance." Restatement (Second) of Contracts § 369 (1981); *Intervisual Commc'ns, Inc. v. Volkert*, 975 F.Supp. 1092, 1100 (N.D. Ill. 1997) ("A minor, non-material breach will not preclude specific

12

performance."). Further, specific performance is generally not appropriate when there is an adequate remedy at law. *Am. Nat. Bank & Trust Co. of Chicago v. Allmerica Fin. Life Ins. & Annuity Co.*, No. 02 C 5251, 2003 WL 1921815, at *5 (N.D. Ill. Apr. 21, 2003).

Plaintiff fulfills all of these criteria. For the reasons discussed above, the first and third elements are satisfied: there is a valid, binding, and enforceable contract, and Dr. Arif has failed to perform. Turning to the second element, any breach by Plaintiff has not discharged Dr. Arif's remaining duties of performance because Dr. Arif has affirmed the contract by electing to enjoy its benefits. *See e.g.*, *Empire Elecs., Inc.*, No. 13 C 376, 2014 WL 5819728, at *6 (N.D. Ill. Nov. 10, 2014) (applying election doctrine); *Integrated Genomics, Inc. v. Kyrpides*, No. 06 C 6706, 2010 WL 375672, at *10 (N.D. Ill. Jan. 26, 2010) (finding that the non-breaching party's waiver made it irrelevant whether breach was partial or material for purposes of enforcing non-solicitation covenant).

Finally, Plaintiff lacks an adequate remedy at law. Damages cannot compensate for harm to business relationships, lost future business opportunities, and misappropriation of business reputation and goodwill. These harms are continuing and will continue until such time as Dr. Arif is prohibited from continuing to breach the terms of the exclusivity provision. (Pls. Stmt. at ¶¶ 51-53.) *See e.g.*, *Scholle Corp. v. Rapak LLC*, 35 F. Supp. 3d 1005, 1014 (N.D. Ill. 2014) *opinion clarified*, No. 13 C 3976, 2014 WL 3687734 (N.D. Ill. July 24, 2014) (loss of goodwill, damage to reputation, and lost business opportunities valid grounds for equitable relief); *Cumulus Radio Corp. v. Olson*, No. 15-CV-1067, 2015 WL 643345, at *9 (C.D. Ill. Feb. 13, 2015) (money damages inadequate compensation for breach of non-competition clause and associated lost business); *A-Tech Comput. Servs., Inc. v. Soo Hoo*, 254 Ill. App. 3d 392, 400, 627 N.E.2d 21, 27 (1993). Though Apex AMR seeks damages in addition to equitable relief, it is

13

well settled in Illinois that a party may receive both equitable relief and damages to compensate for different portions of the harm experienced. *See e.g., Prairie Eye Ctr., Ltd. v. Butler*, 329 Ill. App. 3d 293, 304, 768 N.E.2d 414, 424 (2002).

### B. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF FIDUCIARY DUTY CLAIM (COUNT IV)

Under Illinois law, a plaintiff asserting a claim for breach of fiduciary must prove that "(1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) the breach proximately caused the injury of which the plaintiff complains." *Ball v. Kotter*, 723 F.3d 813, 826 (7th Cir. 2013). Plaintiff is entitled to summary judgment on the issue of liability.

#### 1. Dr. Arif Owes Fiduciary Duties

As a matter of law, Dr. Arif owes fiduciary duties to Apex AMR because they are equal 50% shareholders in Apex Michigan, a de facto closely held corporation for whose management and business operations he is jointly responsible. The parties agree that Dr. Arif and Apex AMR each own 50% of Apex Michigan and that Dr. Arif managed the operations of the business on a daily basis by conducting the clinical trials procured by Apex AMR and overseeing the clinical staff at the Flint trial site, while Apex AMR through its founder and majority shareholder Ms. Nusrat Deen Ahmed, administered the clinical trials contracts and other aspects of the clinical trials business. (Pls. Stmt. at ¶¶ 18, 28-31; Countercl. at ¶¶ 24, 30, 44, 71, 76, 86.) The stock of Apex Michigan is illiquid, has not been traded since its formation, and is held entirely Ms. Nusrat Deen Ahmed and her children. (Pls. Stmt. at ¶¶ 32-33.) Under these circumstances, Apex AMR is a de facto closely held corporation under Illinois law. *See Monfardini v. Quinlan*, No. 02 C 4284, 2004 WL 533132, at *4 (N.D. Ill. Mar. 15, 2004) (finding corporation was closely held when "stock held by only a few people and the stock is not, or rarely, bought or sold"); *Dowell v. Bitner*, 273 Ill. App. 3d 681, 690, 652 N.E.2d 1372, 1379 (1995). And,

14

shareholders in a closely held corporation owe one another fiduciary duties because "the relationship is akin to that of partners or joint venturers and each shareholder has great influence over the corporate business." *Monfardini*, 2004 WL 533132, at *5 (citing *Hagshenas v. Gaylord*, 199 Ill. App. 3d 60, 71, 557 N.E.2d 316, 322–23 (Ill. App. Ct. 1990)). *See also, Illinois Rockford Corp. v. Kulp,* 41 Ill.2d 215, 242 N.E.2d 228 (1968); *In re Joy Recovery Tech. Corp.*, 257 B.R. 253, 274 (Bankr. N.D. Ill. 2001). These fiduciary obligations include a duty of good faith and fair dealing and the duty of loyalty. *Hagshenas*, 557 N.E.2d 316, 323 (1990).

Dr. Arif has expressly acknowledged and agreed to be bound by these fiduciary duties. In the parties 2011 Agreement, Dr. Arif agreed to a Covenant of Good Faith:

> The parties mutually represent and covenant that at all times prior to this Agreement, they have dealt with each other fairly and in good faith. The parties mutually represent and covenant that at all times during the term of this Agreement, they shall deal with each other fairly and in good faith. . . .

(Agreement at § II; Pls. Stmt. at ¶ 25.)

### 2. Dr. Arif Breached His Fiduciary Duties

As discussed above, Dr. Arif unilaterally is diverting payments on Apex AMR and Apex Michigan contracts to a separate entity under his exclusive control, the so-called Apex Flint. This conduct is a breach of Dr. Arif's fiduciary duties. *Hagshenas*, 557 N.E.2d at 323 (1990). Also, as discussed above, Dr. Arif secretly formed a competing business, hid his activities from Apex AMR for approximately six months and is now openly competing even while still a shareholder of Apex Michigan. This, too, breaches his duty of loyalty. *Id.* (forming competing business breaches duty of loyalty).

### 3. The Breach Proximately Caused Plaintiff's Injury

Although determining the amount of Plaintiff's damages must await a trial on the merits, Plaintiff has lost current contracts and future business opportunities due to Defendants'

misconduct, and Dr. Arif is misappropriating the identity, goodwill, and reputation of Apex Michigan in the clinical trials business. (Pls. Stmt. at ¶¶ 15-16, 41-42, 44, 46-47, 51-53.)

## II. COUNTER-DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNTER-PLAINTIFFS' UNJUST ENRICHMENT CLAIM

Under Illinois law, "a plaintiff cannot recover for unjust enrichment when there is a specific contract that governs the relationship of the parties." *Gyptec Iberica v. Alstom Power Inc.*, No. 10C128, 2012 WL 5305510, at *3 (N.D. Ill. Oct. 26, 2012) (St. Eve, J.) (granting summary judgment on an unjust enrichment claim in face of governing contract) (citing *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 723 (7th Cir. 2011)). *See also Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014) (affirming summary judgment on unjust enrichment claim in face of contract); *Jackson v. Xerox Corp.*, 349 F. Supp. 2d 1119, 1124 (N.D. Ill. 2004) (granting summary judgment against unjust enrichment claim in face of contract); *McIntyre v. Household Bank,* No. 02 C 1537, 2004 WL 2958690, at *20 (N.D. Ill. Dec. 21, 2004) (same). Here, as discussed above, a valid and enforceable contract governs the relationship between the parties. Therefore, summary judgment dismissing this claim is appropriate.

16

## CONCLUSION

WHEREFORE, for the foregoing reasons, partial summary judgment should be entered in favor of Plaintiff on Count I and IV of its Amended Complaint. Partial summary judgment should also be entered in favor of Counter-Defendants on the Counter-Plaintiff's unjust enrichment counterclaim.

Dated: July 29, 2015                             Respectfully submitted,


/s/ Matthew F. Prewitt
Matthew F. Prewitt
Shawna S. Boothe

SCHIFF HARDIN LLP
233 S. Wacker Drive
Chicago, IL 60606
Tel: (312) 258-5500
MPrewitt@schiffhardin.com
SBoothe@schiffhardin.com

*Attorneys for Plaintiffs/Counter-Defendants Apex Medical Research, AMR, Inc., Apex Medical Research, MI, Inc., and Nusrat Ahmed*

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2015 I electronically filed the foregoing document using the CM/ECF system, which will cause an electronic copy to be served on counsel of record.

/s/ Shawna S. Boothe